Gants, J.
The plaintiff, Estrella Long (“Long”), the administratrix of the estate of her late husband, Alan Long, has filed suit against Dr. Simon Roy and two other defendants, claiming that their negligent failure properly to diagnose his illness on November 26, 1993 caused his death on December 2, 1993. On March 3, *141 1999, during discovery in this action, Long’s attorney deposed Dr. Roy. During that deposition, Dr. Roy’s attorney instructed his client not to answer questions eleven times, thereby cutting off at least eight lines of inquiry, as detailed below:
1. whether he met with his attorneys at the City of Boston (p. 46);
2. after Dr. Roy testified that Long’s pain had not been relieved by the medications he was taking— Percocet, Vicodin, and Toradel — what Dr. Roy, based on his education, training, and experience today, makes of pain of that type that is not relieved by these medications (pp. 67-68);
3. whether it was his position in the litigation that, whatever the pathological processes that led to Long’s death, they were not present on November 26, 1993 (p. 74 and p. 75);[1]
4. whether in Dr. Roy’s opinion, the pathological process that killed Long was not present when he saw Long on November 26, 1993 (p 75);
5. whether Dr. Roy knows today that a patient who is immuno-suppressed may be slow in developing a febrile response to infection (p. 92);
6. what Dr. Roy today would think about shortness of breath with the pain that Long complained of (pp. 95-97);
7. whether Dr. Roy knows now that shortness of breath may be associated with cardiac failure (p. 99); and
8. whether Dr. Roy today would agree that fever is usually present in pericarditis but may be absent if the process affecting the pericardium does not evoke fever (pp. 154-56).
Apart from the first instruction not to answer, which was based on the attorney-client privilege, all the instructions of Dr. Roy’s attorney not to answer were based on the contention that his client could be required to answer questions based on his knowledge in 1993 but could not be asked about his knowledge today or about any opinion he may hold on any subject.
Dr. Roy’s attorney did not suspend the deposition and move for a protective order. Rather, at the close of the deposition, Long filed this motion to compel answers to the deposition questions that Dr. Roy’s attorney prevented from being answered. Long also moves for the costs and attorney’s fees to be incurred from the anticipated resumption of Dr. Roy’s deposition, and for sanctions. Dr. Roy has filed a counter-motion seeking the costs and fees of having to defend this motion. For the reasons detailed below, Long’s motion to compel Dr. Roy’s deposition testimony is ALLOWED. Long shall be awarded the costs and attorneys fees that Long incurs from the need to resume Dr. Roy’s deposition to answer those questions and pursue those lines of inquiry that were foreclosed by Dr. Roy’s attorney’s improper instructions to his client. Dr. Roy’s counter-motion is DENIED.
Under Mass.R.Civ.P. 30(c), adopted in 1998 specifically to address the problems caused by attorneys telling their clients not to answer deposition questions:
Counsel for a witness or a parly may not instruct a deponent not to answer except where necessary to assert or preserve a privilege or protection against disclosure, to enforce alimitation on evidence directed by the court or stipulated in writing by the parties, or to terminate the deposition and present a motion to the court pursuant to Rules 30(d) or 37(d).
Mass.R.Civ.P. 30(c). Dr. Roy’s attorney contends that he was justified in directing his client — a fact witness — not to answer when the questions that were asked were appropriate only to an expert witness, since Mass.R.Civ.P. 26(b)(4)(A) permits expert witnesses to be deposed only with the approval of the Court, and no such approval had been sought or obtained with regard to Dr. Roy.[2] He argues that instructing Dr. Roy not to answer was “necessary to assert or preserve a . . . protection against disclosure” — the protection against a fact witness being asked at deposition to assert expert opinions. This Court does not share this interpretation of Mass.R.Civ.P. 30(c). It does not reflect the apparent intention of the authors of the amended rule or, in the practical context of medical malpractice litigation, reflect its purpose.
When Mass.R.Civ.P. 30(c) permitted an attorney to instruct a deponent not to answer a question when “necessary to assert or preserve a . . . protection against disclosure,” it was referring to statutory or common law rules, such as the work product protections set forth in Mass.R.Civ.P. 26(b)(3), that protect information from being disclosed to an adverse party in the absence of a showing of compelling need. See Mass.R.Civ.P. 30, Reporter’s Notes — 1998. Mass.R.Civ.P. 26(b)(4)(A) does not protect an expert’s opinions or any other information from being disclosed; it simply prevents an expert from being deposed without the approval of the Court. An expert’s opinions and the grounds for such opinions are always discoverable through answers to interrogatories. See Mass.R.Civ.P. 26(b)(4)(A). Mass.R.Civ.P. 30, therefore, cannot be stretched so broadly as to permit an attorney, without first terminating the deposition and seeking a protective order, to instruct his client not to answer questions that call for an opinion.
Nor would allowing such a refusal make any sense in the context of medical malpractice litigation. The implicit premise of Dr. Roy’s argument is that there is a clear line in medical malpractice cases between a doctor defendant and an opinion witness that would justify fact questions to be asked of a doctor defendant at deposition but bar questions eliciting any opinions. Any such line is an illusion. A physician, by the nature of his medical training, is an expert; if he were not, he should not be practicing medicine. See Delaney v. Rosenthal, 347 *142 Mass. 143, 146 (1964). When, as here, in answer to the complaint he denies that he failed to exercise the degree of skill and care of the average qualified physician in his area of specialty, he essentially is proffering an opinion. The plaintiff is entitled to explore the basis for that opinion at deposition. If Dr. Roy were to have retreated from that opinion in his deposition and admitted that he did indeed fail to act in accordance with the standard of care, that admission alone would permit a jury to find him negligent even in the absence of any expert testimony. Collins v. Baron, 392 Mass. 565, 567-568 (1984) (“A finding that such an admission was made entitled, but did not require, the jury to return a verdict for the plaintiff even if the jury would not have reached that result on the basis of the expert testimony before them”). The plaintiff was permitted in deposition to determine whether he could obtain such an admission from the defendant doctor. Even if the doctor held to his opinion that he acted in accordance with the standard of care, the plaintiff was permitted to ask questions at deposition designed to elicit information that may assist him in cross-examining the doctor at trial.
The plaintiff here was justified in asking questions of Dr. Roy exploring whether, based on the present state of his knowledge, he believed that the care he provided to Mr. Long was in accord with sound medical practice. While in substance he was soliciting the opinions of Dr. Roy, he also was soliciting possible admissions or, at least, obtaining information that he may use at trial to cross-examine Dr. Roy if he were to testify, as defendant doctors generally do in medical malpractice trials, that he acted in accordance with the standard of care. Moreover, questions regarding the present state of Dr. Roy’s knowledge may be valuable in ascertaining whether Dr. Roy knew in November 1993 what he knows today. While the standard of care in 1993 may not have required doctors in Dr. Roy’s specialty to know what they know today, if Dr. Roy today has information that would have caused him to treat Mr. Long differently, that certainly is an appropriate line of inquiry in deposition.
While Dr. Roy’s attorney contended at the hearing on this motion that Dr. Roy at trial would not offer any opinion regarding the adequacy of his care of Mr. Long, it is important to note that he made no such representation during Dr. Roy’s deposition even when specifically questioned on the point. After Dr. Roy’s attorney had instructed his client not to answer questions about the present state of his medical knowledge, Long’s attorney asked, “So, he’s not going to give any opinions when he testifies at trial about the nature of his — Mr. Long’s condition and whether his treatment was in accordance with good medical practice or not? We’re not going to hear any of that from him at trial?” Dr. Roy’s attorney replied, “I’ve already indicated to you that I’m not here to answer your questions.” Deposition at 94-95. Having specifically refused to foreclose opinion testimony by his client at trial, he can hardly foreclose questioning at deposition intended to prepare for cross-examination regarding any such opinions.
Of course, permitting such questioning at deposition does not mean that the answers are necessarily admissible at trial. The better course, as dictated now by Mass.R.Civ.P. 30(c), is to allow the answers to be given by the deponent and let their admissibility at trial be decided by the trial judge in the context of an objection or, preferably, a motion in limine.
In considering the question of sanctions, I am mindful that the question of whether a party deponent in a medical malpractice case may be required to answer opinion questions has not been definitively answered in the case law. Indeed, the Massachusetts Continuing Legal Education’s Massachusetts Deposition Practice Manual acknowledges that counsel for party deponents commonly resist inquiry into opinions except those formed during the course of treatment, and that little guidance has been given as to whether such resistance is permitted. MCLE Massachusetts Deposition Practice Manual Supp. 1998, §13-7 at 13/10-11.[3] Dr. Roy’s attorney, therefore, while in error, cannot be said to have acted in bad faith or without legal basis. Nor do I believe he is the only defense attorney who has taken this position, even after the enactment of the revised Mass.R.Civ.P. 30(c). Therefore, I do not believe it appropriate to order the sanctions sought by the plaintiff. However, the instructions not to answer questions were contrary to Mass.R.Civ.P. 30(c) and will require Dr. Roy to be deposed again so that the plaintiff can obtain answers to the questions he refused to answer and pursue the lines of inquiry emerging from those answers. A resumption of this deposition entails costs: the attorney’s fees incurred by Long’s attorney in attending the deposition and the expense of transcribing it. Since Dr. Roy’s attorney has caused the need for the resumption of this deposition by instructing his client not to answer certain questions, he must bear its costs. Dr. Roy’s attorney, therefore, is ordered to pay to the plaintiff the reasonable attorneys fees incurred by Long’s attorney in attending the resumed deposition and the expense of transcribing it.
ORDER
For the reasons stated above, Long’s motion to compel Dr. Roy’s deposition testimony is ALLOWED. Dr. Roy’s deposition may be resumed so that Long can obtain answers to the questions Dr. Roy refused to answer and pursue the lines of inquiry emerging from those answers. Dr. Roy’s attorney is ordered to pay to Long the reasonable attorney’s fees incurred by Long’s attorney in attending the resumed deposition of Dr. Roy and the expense of transcribing it. Dr. Roy’s counter-motion is DENIED.

 This question was formulated in two ways. Dr. Roy, on the instructions of his counsel, did not answer either question.

 The first instruction not to answer — as to whether Dr. Roy had met with his attorney — was based on the attorney-client *143 privilege rather than any claim of protection of expert opinions. This instruction was improper because the question did not seek to elicit the content of the conversation between Dr. Roy and his attorney at the meeting, but simply to establish that they had met. The mere fact of a meeting between an attorney and client is not protected by the attorney-client privilege. Upjohn Co. v. United States, 449 U.S. 383, 394 (1981).

 Indeed, this Manual declares that the “more well-reasoned opinions” do not require the deponent to testify to any opinion he had not voluntarily considered earlier, but fails to cite those opinions.