Agnes, Peter W., J.
I.INTRODUCTION
This is a medical negligence case in which plaintiffs Susan and Bruce Hanks allege that their son, plaintiff Jacob Hanks, suffered brain damage and other injuries on December 29, 2000 as a result of the defendants’ negligence in failing to perform timely blood tests that delayed an emergency Cesarean-section delivery of Jacob Hanks by 30 minutes. Plaintiffs deposed defendant Dr. David Klein on June 27, 2005 and again on May 26, 2006. Plaintiffs deposed defendant Dr. Paul S. Dunn on October 14, 2005. Plaintiffs deposed defendant Dr. Jane Molinari on November 15, 2005. Plaintiffs allege that during the course of their depositions Dr. Klein, Dr. Dunn and Dr. Molinari refused to answer questions at the instruction of counsel, in violation of Mass.R.Civ.P. 30(c). Plaintiffs request orders compelling Dr. Klein, Dr. Dunn and Dr. Molinari to reappear for deposition, to answer questions and for the costs, attorneys fees and expenses associated with reconvening the depositions.
Plaintiffs allege that Dr. Klein was instructed by counsel not to answer questions at his May 26, 2006 deposition that fall under three lines of inquiry:
1. questions regarding the protocol for the administration of Pitocin to induce labor (Klein Dep. 43-45, May 26, 2006);
2. whether the nurses under his supervision acted within the appropriate standard of care (Klein Dep. 57-62); and
3. whether he consulted the Hanks family with regard to the risks related to a trial of labor versus a Cesarean-section delivery (Klein Dep. 109-16).
Further, plaintiffs allege that Dr. Dunn was instructed by counsel at his deposition not to answer questions regarding whether plaintiff Jacob Hanks should have been delivered by Cesarean-section on December 28, 2000. (Dunn Dep. 112:1-4, Oct. 14, 2005.) Finally, plaintiffs allege that Dr. Molinari was instructed by counsel at her deposition not to answer questions regarding an affirmative defense (Molinari Dep. 94-97, November 15, 2005) and questions regarding her answers to plaintiffs request for admissions. (Molinari Dep. 30-32.)
II. DISCUSSION
A. General Rules Regarding Depositions of Physicians in Medical Negligence Cases.
In resolving the questions presented by these motions it is useful to review the general principles that apply to the deposition of physicians in medical negligence cases. The parties have broad latitude to depose fact witnesses. See Mass.R.Civ.P 26(b)(1). Ordinarily, a fact witness cannot be required to express opinions. See Dean Foods Co. v. Pappathanasi, 17 Mass. L. Rptr. 741, 2004 Mass.Super. LEXIS 216, at *2-3 (Mass.Super.Ct., 2004). The deposition of expert witnesses[1] requires prior judicial approval and is reserved for circumstances in which the expert’s answers to interrogatories under Mass.R.Civ.P. 26(b)(4)(A)(l) are “inadequate, incomplete, inconsistent or when the discovering party is unable to obtain *505 equivalent information through other means.”[2] Lozoraitis v. Lachman, 16 Mass. L. Rptr. 809, 2003 Mass.Super. LEXIS 401, at *4 (Mass.Super.Ct., 2003). Federal Practice is more liberal and allows deposition of experts as a matter of routine. Fed.R.Civ.P. 26(4). Ordinarily a person is either a “fact witness” or an “expert witness.”[3] However, a witness such as a treating physician may be both a fact witness and an expert witness. See Long v. Roy, 10 Mass. L. Rptr. 140, 1999 Mass.Super. LEXIS 192, at *6-7 (Mass.Super.Ct., 1999). See also Burgess v. Med. Ctr. of Greater Lowell, 14 Mass. L. Rptr. 310, 2002 Mass.Super. LEXIS 8, at *8 n.5 (Mass.Super.Ct., 2002) (citing Lee v. Knutson, 112 F.R.D. 105 (N.D.Miss. 1984). Ultimately, the test is based on the nature of the testimony to be produced: if it is observations of a physical condition or event, the witness is a fact witness; if it is testimony about a diagnosis, treatment or causation it is expert opinion. See Morgan v. U.S. Xpress Inc., 2006 WL278398, at *2 (M.D.Ga. 2006).
It is settled that the defendant in a medical negligence case may depose the plaintiffs treating physician about any facts or opinions he or she may know that are relevant to the case with the exception of facts and opinions “acquired or developed in anticipation of trial.” Burgess, 2002 Mass.Super. LEXIS 8 at *4 (citing Mass.R.Civ.P. 26(b)(4)). This is consistent with the Massachusetts rule that permits a party to ask a fact witness for an expert opinion based on matters within the deponent’s personal knowledge. See Commonwealth v. Vitello, 367 Mass. 224, 235 (Mass. 1975) [4] Likewise, the plaintiff may depose the defendant physician by asking questions about opinions formed during the course of treatment as well as other opinions he or she is qualified to give about matters within his or her personal knowledge other than those acquired or developed in anticipation of litigation. See Long, 1999 Mass.Super. LEXIS 192 at *8.
B. The Specific Claims
1. The Pitocin Protocol
Plaintiffs argue that Dr. Klein must read a document, the UMass Memorial standard IV Pitocin protocol, and answer questions relating to it. Plaintiffs’ argument is that since Dr. Klein has denied that he breached the applicable standard of care, and that the Pitocin protocol document represented the applicable standard of care, then he may be asked questions regarding how he reached his expert opinion that he did not violate the standard of care for treatment with Pitocin. Defendants argue that the protocol Dr. Klein was presented with was a nurses’ protocol that does not apply to him. Dr. Klein, at his deposition, said that he had never seen the protocol until it was handed to him at the deposition. (Klein Dep. 26:5-14.)
Deponents may not be called upon to render “on the spot” opinions. See Rolli v. Melenevskaya, 13 Mass. L. Rptr. 605, 2001 Mass.Super. LEXIS 438, at *7 (Mass.Super.Ct., 2001). To compel Dr. Klein to render an opinion on a protocol that he claims he has never before seen would require him to render just the sort of “on the spot opinion” that Rolli forbids.[5] The fundamental principle that undergirds the Rolli decision is that experts may not be compelled to give their opinions on facts outside of their personal knowledge. “A party may not by summons compel the involuntary testimony of an expert witness solely for the expertise he may bring to the trial and in the absence of any personal knowledge on his part related to the issues before the judge and jury.” Id. (citing Bagley, 401 Mass. 822 at 826-27 (quoting Vitello, 367 Mass. at 235)).
2. Expert Opinion on the Care Given by Another
The second disputed question posed to Dr. Klein and the disputed question posed to Dr. Dunn present largely the same issue: Can a defendant who is an expert be compelled to answer questions at deposition that call for an expert opinion on the acts performed by another? Dr. Klein was repeatedly asked whether the nurses followed the protocol for the administration of Pitocin. (Klein Dep. 57-62.) Dr. Klein ordered the administration of Pitocin; however he neither administered it himself nor observed the nurses who did. (Klein Dep. 42-43.) To compel him to answer this line of inquiiy is to compel him to offer his expert medical opinion of the care given by nurses. Similarly, Dr. Dunn was asked whether Jacob Hanks required an immediate Cesarean section on December 28, 2000. (Dunn Dep. 110:14-17.) Dr. Dunn did not initiate his care of Jacob Hanks until the morning of Dec 29, 2000. (Dunn Dep. 109.) To compel Dr. Dunn to answer this question is to compel him to offer his expert medical opinion of the care given by another doctor.
To support their argument that defendants Dr. Klein and Dr. Dunn should be compelled to answer these questions, plaintiffs point to language in Long, 1999 Mass.Super. LEXIS 192 at *6-8. There is apivotal difference between the facts of Long and the facts of this case. The plaintiff in Long wanted to compel a defendant doctor to answer questions, in his expert opinion, about his own prior conduct. Long, 1999 Mass.Super. LEXIS 192 at *1-3. Here plaintiffs want to compel Dr. Klein and Dr. Dunn to answer questions, in their expert opinions, about the conduct of others.
Experts can be required to answer questions at deposition that call upon their expert opinion, so long as the questions are within the scope of the deponent’s personal knowledge. See Long, 1999 Mass.Super. LEXIS 192 at *8. However, a deponent may not be compelled to offer an expert opinion on a subject about which he or she has no personal knowledge. See Bagley, 401 Mass, at 826-27. Although Mass.R.Civ.P. 30(c) was amended in 1998, after Vitello and Bagley were decided, it negated neither. Mass.R.Civ.P. 30(c) narrowly limits when counsel can instruct a deponent not to answer a question. See Mass.R.Civ.P. 30(c) reporters’ notes. However, it does not broaden what *506 sort of testimony can be compelled beyond the limits of Vitello and Bagley.[6]
Questions regarding whether Dr. Klein discussed the risks of proceeding with a trial of labor with Susan and Bruce Hanks were fully answered.[7]
3. Attorney-Client Privilege
Plaintiffs’ motion to compel Dr. Molinari to reappear for deposition and answer questions presents a different set of issues. Counsel for defendant Dr. Molinari twice invoked the attorney-client privilege and instructed his client not to answer questions. (Molinari Dep. 30:7-9, 94:7-95:19.) One of the few instances where Mass.R.Civ.P. 30(c) permits counsel to instruct deponents not to answer questions is to preserve the attorney-client privilege. See Mass.R.Civ.P. 30(c) reporter’s notes. The attorney client privilege is the oldest common-law privilege and exists to allow clients to speak freely with their attorneys in order to receive informed legal advice. See 49 Hon. Peter M. Lauriat et al., Massachusetts Practice Series, §2.6 (2005); see also Upjohn v. United States, 449 U.S. 383, 389 (1981), Pardo v. General Hosp. Corp., 446 Mass. 1, 15 n.27 (Mass. 2006). Therefore, the issue here is whether the questions asked by plaintiffs counsel sought privileged information.
1. The Affirmative Defense
Dr. Molinari, in her answers to the complaint, asserted the affirmative defense thát she was not responsible for the injuries to plaintiff Jacob Hanks and that someone else was. (Dep. Molinari 94:7-11.) Counsel for plaintiffs sought to depose Dr. Molinari as to the facts that underlie this affirmative defense. (Dep. Molinari 95:8-11.) Dr. Molinari’s answer was, essentially, that her involvement with the care of plaintiff Susan Hanks ended well before the injuries to Jacob Hanks occurred and that she does not know who is responsible for his injuries. (Molinari Dep. 96:16-20.) Any speculation she may have done upon the matter with her attorney, in the course of seeking legal advice, is protected by the attorney-client privilege. See Rotenberg v. Commissioner, 424 Mass. 430, 457 (Mass. 1997). Furthermore, Dr. Molinari may not be compelled to answer questions regarding any further facts she may have learned “in anticipation of litigation.” See Mass.R.Civ.P. 26(b)(4).
2. The Request for Admissions
Plaintiff sought answers to questions regarding why she chose to answer a request for admissions the way she did.[8] Defendant’s counsel directed defendant Dr. Molinari not to answer based on attorney-client privilege. (Molinari Dep. 30:7-9.) A conversation between an attorney and his or her client about what information to include in answers to interrogatories is exactly the sort of legal advice that is protected by the attorney-client privilege. See Rotenberg, 424 Mass. at 457. Pursuant to the answers given by Dr. Molinari at her deposition, it is the Court’s understanding that Dr. Molinari’s answer to the request for admission is equivalent to a stipulation by Dr. Molinari that she and plaintiff Susan Hanks had a physician-patient relationship on December 28th 2000.[9] If this is not acceptable to either plaintiffs or defendants, they may alert the Court.
Questions regarding Dr. Molinari’s refusal to authenticate a document in her answers to requests for admissions were fully answered.[10]
4. Costs
One could imagine a set of circumstances where a party’s counsel repeatedly instructed his or her client not to answer deposition questions in violation of Mass.R.Civ.P. 30(c) and where the opposing counsel filed a motion to compel answers and a motion for the costs, fees and expenses associated with reconvening a deposition. One could further imagine a court that might compel only some of the answers along with the costs, fees and expenses of reconvening the deposition. This hypothetical illustrates the risk an attorney runs when instructing his or her client not to answer deposition questions without asserting valid privilege or protection against disclosure. The attorney might win a few battles but, ultimately, lose the war. However, this is not the actual set of facts presented to this Court. In this case, where all of plaintiffs motions to compel are denied, so too is the motion for costs, fees and expenses.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs Susan Hanks, Jacob Hanks and Bruce Hanks’s motions to compel deposition testimony of Dr. David Klein, Dr. Paul S. Dunn and Dr. Lisa Molinari, and for the costs, fees and expenses associated therewith, are DENIED.

An expert witness is a person qualified as an expert by knowledge, skill, experience, training, or education to testify in the form of an opinion or otherwise. Mass.R.Civ.P. 33(m)(1).

Mass.R.Civ.P. 30(A)(m), which authorizes audio-visual depositions has no application to another party’s treating physician or expert. See Reporters note; Burgess, 2002 Mass.Super. LEXIS 8 at *7 n.4.

This difference has been further clarified by amendments to the Federal Rules of Evidence that establish a sharp and clear distinction between testimony based on observations and expert testimony. See United States v. Henderson, 409 F.3d 1293, 1299-1300 (11th Cir. 2005) (discussing Fed.R.Evid. 701(c) 2002); Bell v. Gonzales, 2005 WL3555490 *12, (D.D.C. 2005).

While the testimony of an expert witness at trial without payment may also be compelled “this power is exercised sparingly, and only when ‘necessary for the purposes of justice.’ ” Bagley v. Illyrian Gardens, Inc., 401 Mass. 822, 827 (Mass. 1988) (quotations omitted).

To the extent that Dr. Klein was asked questions about his understanding of the Pitocin protocol that he had ordered, he answered them fully. (Klein Dep. 64:12-19.)

While defendant counsel’s instructions not to answer questions may have been improper, to compel the answers to those questions would be, likewise, improper. Perhaps the defendant’s counsel should have suspended the deposition *507 and sought a protective order pursuant to Mass.RCiv.P. 30(d). But to improperly compel defendants to answer questions that, for the most part, were answered, would be an exercise in futility.

The third disputed line of questioning to Dr. Klein, whether he discussed the risks with Susan and Bruce Hanks (Klein Dep. 105:16-21), and whether he used the term “risks” in that discussion (Klein Dep. 110:21), was clearly answered. Dr. Klein stated that he discussed the risks of an emergency Cesarean-section delivery and of a trial of labor with Susan and Bruce Hanks (Klein Dep. 110:6-20), and whether the term “risks” was used (Klein Dep. 111:23-24, “I think we talked about risks”).

The deposition of Dr. Molinari led to the following exchange:
Q. You were acting as her [Plaintiff Susan Hanks] physician at the time were you not?
A. I was.
Q. Then why did you not answer that and admit that when you were sent requests for admissions?
(Molinari Dep. 29:16-21.)

The language of Dr. Molinari’s answer to requests for admissions was “I saw Susan Hanks on December 28th, 2000 at my Worcester office.” (Molinari Dep. 30:3-4.)

Plaintiffs’ counsel asked why Dr. Molinari refused to authenticate a document in her answer to requests for admission. (Molinari Dep. 32:9-14.) Counsel for Dr. Molinari objected on the grounds that the document she was asked to authenticate was not an original document. (Molinari Dep. 32:21-33:4.) Her refusal to authenticate the document foreclosed no line of questioning that the plaintiffs can articulate.